<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| WILFREDO MORA, | : | Civil No. 09-4183 (JBS) |
| | : | |
| Plaintiff, | : | |
| | : | **O P I N I O N** |
| v. | : | |
| | : | |
| CAMDEN COUNTY, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

STEVEN GROHS, 141629B, Plaintiff <u>Pro Se</u>
South Woods State Prison
215 Burlington Road South
Bridgeton, New Jersey 08302

ALONZO BEARD, 109480B, Plaintiff <u>Pro Se</u>
Central Reception and Assignment Facility
P.O. Box 7450
West Trenton, New Jersey  08628

IAN MARK SIROTA, Esq.
MARGOLIS EDELSTEIN
100 Century Parkway, Suite 200
Mt. Laurel, New Jersey  08054

HOWARD LANE GOLDBERG, Esq.
Office of Camden County Counsel
520 Market Street - 14th Floor
Camden, New Jersey  08102-1375

**SIMANDLE**, District Judge:

Defendants Aramark Correctional Services, LLC ("Aramark"),
and Crystal A. Koonce removed this civil rights case from the
Superior Court of New Jersey, Camden County, to this Court.
Plaintiff Steven Grohs filed a motion asking this Court to
construe the Complaint as an action under 42 U.S.C. § 1983 and to

certify a class of plaintiffs, and defendants Aramark and Koonce
filed a motion for judgment on the pleadings, pursuant to Fed. R.
Civ. P. 12(c).  This Court directed the parties to show cause why
the matter should not be remanded to the Superior Court of New
Jersey.  This Court will discharge the Order to Show Cause based
on the parties' responses and, for the reasons expressed below,
sua sponte dismiss the Complaint without prejudice pursuant to 28
U.S.C. § 1915A(b)(1) and deny the parties' motions as moot.

## I.  BACKGROUND

### A.  Procedural History

On August 15, 2008, Wilfredo Mora, Leonard Purnell, Michael
Jackson, Steven Grohs, Philip Chafe, and Alonzo Beard, then
inmates at Camden County Correctional Facility ("CCCF"), filed
the Complaint in the New Jersey Superior Court, Law Division,
Camden County.  Although Defendants have submitted to this Court
neither a copy of the state court docket nor copies of all
documents filed in the state court, it appears that Defendants
Aramark and Koonce filed an answer in that proceeding on or about
May 6, 2009 (Docket Entry #20-2 at pp. 4-11), and on June 12,
2009, Superior Court Judge F.J. Fernandez-Vina issued an order
denying Plaintiff Grohs' motion to consolidate the action with
all other similar causes, denying Grohs' renewed motion to
certify the cause and all other similar causes as one single

2

class action, and denying his renewed motion for appointment of counsel (Docket Entry #19-4).

On August 17, 2009, Defendants Aramark and Koonce filed a notice of removal in this Court, asserting that this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because the Complaint alleges violation of the United States Constitution under 42 U.S.C. § 1983.  See 28 U.S.C. §§ 1441(b), 1446(a).[1] Because mail sent by the Clerk to each plaintiff was returned as undeliverable, on September 15, 2009, this Court administratively terminated this action for failure to comply with Local Civil Rule 10.1(a), which requires unrepresented parties to advise the Court of any change in address within five days.

On September 28, 2009, Plaintiff Steven Grohs filed a motion asking this Court to construe the Complaint as an action under 42 U.S.C. § 1983 and to certify a class of plaintiffs.  By Order entered October 2, 2009, this Court directed the Clerk to reopen the matter as to Plaintiff Steven Grohs, change his address of record on the docket to South Woods State Prison, and mail Mr. Grohs a copy of the public docket and this Court's Orders.  The Order specifically provided that the matter was to remain closed as to all other plaintiffs unless and until that plaintiff

---

[1] As previously stated, Defendants did not file with the notice of removal, or thereafter, "a copy of all process, pleadings, and orders served . . . in such action," as required by 28 U.S.C. § 1446(a).

provided the Court with a current address.  The Order further
stated that the Complaint is subject to screening for dismissal
pursuant to 28 U.S.C. § 1915A.

On October 15, 2009, Plaintiff Alonzo Beard filed an
objection to Defendants' interrogatories.  By Order entered
October 20, 2009, this Court ordered the Clerk to reopen the
matter as to Plaintiff Alonzo Beard and to change Mr. Beard's
address of record to Central Reception and Assignment Facility
(the address on Mr. Beard's objection).  The Order further
provided that the matter was to remain closed as to Plaintiffs
Wilfredo Mora, Leonard Purnell, Michael Jackson, and Philip
Chase, unless and until each provided the Court with a current
address.  Again, the Order stated that the Complaint is subject
to screening for <u>sua</u> <u>sponte</u> dismissal pursuant to 28 U.S.C. §
1915A.

Defendants Aramark and Koonce filed a cross motion to
dismiss the Complaint with prejudice, pursuant to Fed. R. Civ. P.
12(c), as well as a legal argument opposing Plaintiff Grohs'
motion and supporting dismissal.  Plaintiff Grohs filed a
response to the cross motion to dismiss and a reply to
Defendants' response to his motion.

This Court directed Defendants Aramark and Koonce to show
cause in writing why the case should not be remanded to the New
Jersey Superior Court, Law Division.  Aramark and Koonce filed a

4

brief in response to the Order to Show Cause, arguing that remand was not warranted, and Plaintiff Grohs filed a letter in response to Defendants' brief.

B.  Facts Alleged in the Complaint

The Complaint, which was executed on August 12, 2008, states that Plaintiff Steven Grohs is a pretrial detainee incarcerated at CCCF and Plaintiff Alonzo Beard is serving a county sentence at CCCF.[2]  The statement of facts is set forth below verbatim:

> 3.1  In November, 2007, Aramark proposed the Menu, which consists of four weekly pages, to the other named defendants.  Subsequently, the proposed Menu was approved by either Taylor, Walker, and/or Ripa.  The Menu was implemented in January, 2008.
>
> 3.2  The Menu clearly outlines specific weights, measurements, qualities, and quantities of both food items and beverages.  It is the responsibility of Taylor, Walker, and/or Ripa, Aramark and Koonce to implement the specifics of the Menu in accordance with all human standards in mind.
>
> 3.3  It is the custom of the defendants to use inmate labor to prepare and transport food items, once placed on trays, and beverages, once placed in kegs, to all inmate housing areas.  It is this custom that causes or contributes to the defendants being deliberately indifferent.
>
> 3.4  It is the practice of Aramark to continually have an employee supervising the inmates, who work at the kitchen, during the time that the food and beverages are being prepared.  It is this practice that the defendants are deliberately indifferent to.

---

[2] As this action is closed as to all plaintiffs except Steven Grohs and Alonzo Beard, the statement of facts is limited to the allegations made by Plaintiffs Grohs and Beard.

3.5  It is the policy of the CCCF to have a Correctional Sergeant in the kitchen, during the time that inmates prepare the food for the general population, to ensure that the food and beverages are being prepared according to the specifics of the Menu. It is this policy that the defendants are deliberately indifferent to.

3.6  The Menu requires that the defendants provide every inmate with both 3000 calories and 80 grams of protein daily, within a weekly time frame.  The defendants have failed and are failing to provide the inmate population with these two provisions.  It is these two provisions that the defendants are deliberately indifferent to.

3.7  It is business as usual for the defendants to provide the inmate population with, *inter alia*, the following:

        (a) Weakened coffee that is neither unlimited, warm/hot, nor sweetened;

        (b) Weakened tea that is neither unlimited, iced, nor sweetened;

        (c) Raw cabbage in lieu of a salad;

        (d) Disproportion[al] food items amongst the trays;

        (e) Either no ketchup or mustard or less than ½ ounce;

        (f) Food that is not prepared according to the Menu; and,

        (g) Items not listed on the Menu.

These provisions are contrary to the requirements of the Menu.  It is these provisions that the defendants are deliberately indifferent to.

3.8  It is the defendants' custom, policy, and practice, on a weekly basis, to so widely deviate from the requirements of the Menu that the inmate population is being deprived of an adequate source of a meaningful supply of nutrition.  The defendants either knew or should have known that the requirements of the Menu were not being met.

3.9  As a direct result of the defendants' failure to provide inmates with an adequate source of meaningful supply of nutrition, as required by the Menu, the plaintiffs have been forced to live in an environment that is unhealthy.

3.10  The environment at the CCCF has resulted in a number of violations to Plaintiffs' right to safe and healthy prison conditions under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment.

3.11  Examples of the unhealthy environment that has resulted from the defendants' failure to provide inmates with an adequate source of meaningful supply of nutrition, include, *inter alia*, the following:

<u>Inadequate Calorie and Protein Intake</u>

(a) Due to the lack of a daily intake of 3000 calories and 80 grams of protein, Plaintiffs Mora, Purnell, Jackson, Grohs, Chafe, and Beard were forced to sustain diminished mental and physical faculties and could not perform some usual human functions;

(b) Due to the lack of a daily intake of 3000 calories and 80 grams of protein, Plaintiffs Mora, Purnell, Jackson, Grohs, Chafe, and Beard were forced to endure a diminished resistance to fatigue and illness;

<u>Inadequate Provisions of Food Items</u>

(c) Due to the lack of a reasonable amount of food and beverage items, Plaintiffs Mora, Purnell, Jackson, Grohs, Chafe, and Beard were forced to endure severe hunger pains;

(d) Due to the inadequate provision of food and beverage items, Plaintiffs Purnell, Jackson, and Beard were forced to pick discarded food from other inmates' trays - food that another inmate refused to eat; and,

(e) Due to the inadequate provision of food and beverage items, Plaintiffs Mora, Grohs, and Chafe were compelled tp purchase food items from the inmate canteen in order to supplement the food provided to them by the CCCF.

3.12  The conditions described above are just a few examples of the ways in which the defendants have created an unhealthy environment at the CCCF.  The plaintiffs have suffered injuries as a result of the aforesaid conditions which constitute violations of their rights under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment.

3.13  Plaintiffs Mora, Purnell, Jackson, Grohs, Chafe, and Beard have each submitted Inmate Grievance forms ("Forms") concerning all of the above-mentioned defendants' unreasonable and inadequate provisions.  However, the forms were not returned for any plaintiffs' signature.  No response was timely rendered and a time for doing so is long past.  Moreover, in, *inter alia*, the month of June, 2008, the inmate population had submitted about one hundred Forms concerning either the quality and/or quantity of the food and beverage served to the inmate population as a whole by the CCCF.

3.14  As a result of the conduct and events described herein, Plaintiff Mora has suffered serious emotional and physical injuries, and has suffered real and measurable money damages.

3.15  As a result of the conduct and events described herein, Plaintiff Purnell has suffered serious emotional and physical injuries, and has suffered real and measurable monetary damages.

3.16  As a result of the conduct and events described herein, Plaintiff Jackson has suffered serious emotional and physical injuries, and has suffered real and measurable monetary damages.

3.17  As a result of the conduct and events described herein, Plaintiff Grohs has suffered serious emotional and physical injuries, and has suffered real and measurable monetary damages.

3.18  As a result of the conduct and events described herein, Plaintiff Chafe has suffered serious emotional and physical injuries, and has suffered real and measurable monetary damages.

3.19  As a result of the conduct and events described herein, Plaintiff Beard has suffered serious emotional

and physical injuries, and has suffered real and measurable monetary damages.

(Compl. ¶¶ 3.1 - 3.19) (Docket Item 1-2.)

For violation of their constitutional rights under 42 U.S.C. § 1983, Plaintiffs seek declaratory and injunctive relief.

## II.  STANDARD FOR DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires the Court, prior to docketing or as soon as practicable after docketing, to review a complaint in a civil action in which a prisoner seeks redress against a governmental employee or entity.  The PLRA requires the Court to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A.

A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios." Neitzke v. Williams, 490 U.S. 319, 328 (1989); see also Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990).

Addressing the clarifications as to the litigant's pleading requirement stated by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Court of Appeals for the Third Circuit provided District Courts with guidance as to what pleadings are sufficient to pass muster under Rule 8.

9

See <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230-34 (3d Cir. 2008). Specifically, the Court of Appeals observed as follows:

> "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' . . . ." <u>Twombly</u>, 127 S. Ct. at 1964-65 . . . ."[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain statement [must] possess enough heft to 'sho[w] that the pleader is entitled to relief.'" <u>Id.</u> at 1966. [Hence] "factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 1965 & n.3.

<u>Id.</u> at 230-34 (original brackets removed).

This pleading standard was further refined by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), where the Supreme Court clarified as follows:

> [In any civil action, t]he pleading standard . . . demands more than an unadorned ["]the-defendant-unlawfully-harmed-me["] accusation. [<u>Twombly</u>, 550 U.S.] at 555 . . . . A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [<u>Id.</u>] at 555. [Moreover,] the plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. <u>Id.</u> [Indeed, even w]here a complaint pleads facts that are "merely consistent with" a defendant's liability, [the so-alleging complaint still] "stops short of [showing] plausibility of 'entitlement to relief.'" <u>Id.</u> at 557 (brackets omitted). [A <u>fortiori</u>,] the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions [or to t]hreadbare recitals of the elements of a

> cause of action, supported by mere conclusory statements [, _i.e._, by] legal conclusion[s] couched as a factual allegation [e.g.,] the plaintiffs' assertion of an unlawful agreement [or] that [defendants] adopted a policy "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." . . . . [W]e do not reject these bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [these] allegations . . . that disentitles them to the presumption of truth. . . . [Finally,] the question [of sufficiency of] pleadings does not turn [on] the discovery process. _Twombly_, 550 U.S.] at 559 . . . . [The plaintiff] is not entitled to discovery [where the complaint asserts some wrongs] "generally," [_i.e._, as] a conclusory allegation [since] Rule 8 does not [allow] pleading the bare elements of [the] cause of action [and] affix[ing] the label "general allegation" [in hope of developing actual facts through discovery].

_Iqbal_, 129 S. Ct. at 1949-54.

The Third Circuit observed that _Iqbal_ hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in _Conley v. Gibson_, 355 U.S. 41, 45-46 (1957),[3] which was applied to federal complaints before _Twombly_. _See_ _Fowler v. UPMC Shadyside_, 578 F.3d 203 (3d Cir. 2009). In light of _Iqbal_, the Third Circuit requires District Courts to conduct, with regard to Rule 8 allegations, a two-part analysis when reviewing a complaint for dismissal for failure to state a claim:

---

[3] The _Conley_ court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." _Conley v. Gibson_, 355 U.S. at 45-46.

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  [See Iqbal, 129 S. Ct. at 1949-50].  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief" [in light of the definition of "plausibility" provided in Iqbal.]  In other words, a complaint must do *more than allege the plaintiff's entitlement to relief*.  A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the *mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief*.'"  Iqbal, [129 S. Ct. at 1949-50 (emphasis supplied)].  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

Fowler, 578 F.3d at 210-11 (emphasis supplied).

The Court is mindful that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007). With these precepts in mind, the Court will determine whether the Complaint should be dismissed for failure to state a claim upon which relief may be granted.

### III.  DISCUSSION

Section 1983 of Title 42 of the United States Code authorizes a person such as Plaintiffs to seek redress for a violation of federal civil rights by a person who was acting

12

under color of state law.  Section 1983 provides in relevant
part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State or Territory . . . subjects, or
> causes to be subjected, any citizen of the
> United States or other person within the
> jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured
> by the Constitution and laws, shall be liable
> to the party injured in an action at law,
> suit in equity, or other proper proceeding
> for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two
elements:  (1) a person deprived him or caused him to be deprived
of a right secured by the Constitution or laws of the United
States, and (2) the deprivation was done under color of state
law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H.
Kress & Co., 398 U.S. 144, 152 (1970); Sample v. Diecks, 885 F.2d
1099, 1107 (3d Cir. 1989).

Plaintiffs assert that "the inmate population is being
deprived of an adequate source of a meaningful supply of
nutrition," the diet served to inmates at CCCF contains
inadequate calories and protein, and defendants knew or should
have known of these deficiencies.  (Compl. ¶¶ 3.8 - 3.12.)
Plaintiffs allege that, as a result, their mental and physical
faculties were diminished, they experienced hunger pains, they
often had to supplement the diet with food purchased from the

commissary, they could not perform some usual human functions, and their capacity to resist fatigue and illness was diminished. (Id.)  This Court construes these allegations as an attempt to state a conditions of confinement claim under the Eighth Amendment, with respect to Plaintiff Beard (a sentenced inmate), and the Due Process Clause of the Fourteenth Amendment, with respect to Plaintiff Grohs (a pretrial detainee).  Since "the due process rights of a [pretrial detainee] are at *least* as great as the Eighth Amendment protections available to a convicted prisoner," Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005) (citation omitted), this Court will examine the allegations under the standard set forth in Bell v. Wolfish, 441 U.S. 520 (1979), i.e., whether the conditions of confinement amounted to punishment prior to an adjudication of guilt.

The Due Process Clause of the Fourteenth Amendment prohibits punishment of a pretrial detainee prior to an adjudication of guilt in accordance with due process of law.[4]  See Bell v.

---

[4] "[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." Bell v. Wolfish, 441 U.S. 520, 537, n.16 (1979) (quoting Ingraham v. Wright, 430 U.S. 651, 671-72, n.40 (1977)); see also  City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983).

Wolfish, 441 U.S. at 535; Hubbard, 399 F.3d at 166.  As the

Supreme Court explained,

> [I]f a particular condition or restriction of
> pretrial detention is reasonably related to a
> legitimate governmental objective, it does
> not, without more, amount to "punishment."
> Conversely, if a restriction or condition is
> not reasonably related to a legitimate goal -
> if it is arbitrary or purposeless - a court
> permissibly may infer that the purpose of the
> governmental action is punishment that may
> not constitutionally be inflicted upon
> detainees qua detainees.

Bell v. Wolfish, 441 U.S. at 539 (footnote and citation omitted).

    The maintenance of security, internal order, and discipline

are essential goals which at times require "limitation or

retraction of . . . retained constitutional rights."  Bell, 411

U.S. at 546.  "Restraints that are reasonably related to the

institution's interest in maintaining jail security do not,

without more, constitute unconstitutional punishment, even if

they are discomforting and are restrictions that the detainee

would not have experienced had he been released while awaiting

trial."  Id. at 540.  "In assessing whether the conditions are

reasonably related to the assigned purposes, [a court] must

further inquire as to whether these conditions cause [inmates] to

endure [such] genuine privations and hardship over an extended

period of time, that the adverse conditions become excessive in

relation to the purposes assigned to them."  Hubbard v. Taylor,

399 F.3d at 159 (quoting <u>Union County Jail Inmates v. DiBuono</u>, 713 F.2d 984, 992 (3d Cir. 1983)).

The Third Circuit summarized the conditions of confinement standard under <u>Bell</u> as follows:

> [A] particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.

<u>Stevenson v. Carroll</u>, 495 F. 3d 62, 68 (3d Cir. 2007) (citation and internal quotation marks omitted).

Thus, the Third Circuit has "distilled the Supreme Court's teachings in <u>Bell</u> into a two-part test. We must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes." <u>Hubbard v. Taylor</u>, 538 F. 3d 229, 232 (3d Cir. 2008) (citation and internal quotation marks omitted). Moreover, the Fourteenth Amendment standard of unconstitutional punishment, like the Eighth Amendment's cruel and unusual punishments standard, contains both an objective component and a subjective component:

> Unconstitutional punishment typically includes both objective and subjective components. As the Supreme Court explained in <u>Wilson v. Seiter</u>, 501 U.S. 294 . . . (1991), the objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective

16

> component asks whether "the officials act[ed]
> with a sufficiently culpable state of
> mind[.]" Id. at 298 . . . .  The Supreme
> Court did not abandon this bipartite analysis
> in Bell, but rather allowed for an inference
> of mens rea where the restriction is
> arbitrary or purposeless, or where the
> restriction is excessive, even if it would
> accomplish a legitimate governmental
> objective.

Stevenson, 495 F. 3d at 68.

Under the Due Process Clause, as well as the Eighth
Amendment, prison officials must satisfy inmates' "basic human
needs - e.g., food, clothing, shelter, medical care, and
reasonable safety." Helling v. McKinney, 509 U.S. 25, 32 (1993).
The Constitution requires "that prisoners be served
'nutritionally adequate food that is prepared and served under
conditions which do not present an immediate danger to the health
and well being of the inmates who consume it' [and] under certain
circumstances a substantial deprivation of food may well be
recognized as being of constitutional dimension." Robles v.
Coughlin, 725 F. 2d 12, 15 (2d Cir. 1983) (quoting Ramos v. Lamm,
639 F. 2d 559, 571 (10th Cir. 1980)).  "[A] prisoner's diet must
provide adequate nutrition, but prison officials cannot be held
liable under the [constitutional standard] unless the prisoner
shows both an objectively serious risk of harm and that the
officials knew about it and could have prevented it but did not."
Mays v. Springborn, 575 F. 3d 643, 648 (7th Cir. 2009) (citation

17

omitted).[5]   Objectively, "[w]hether the deprivation of food falls below this [constitutional] threshold depends on the amount and duration of the deprivation." Berry v. Brady, 192 F. 3d 504, 507 (5th Cir. 1999) (quoting Talib v. Gilley, 138 F. 3d 211, 214 n.3 (5th Cir. 1998)).  As the Supreme Court emphasized, "the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards.  A filthy, overcrowded cell and a diet of 'grue' [providing 1000 calories a day] might be tolerable for a few days and intolerably cruel for weeks or months." Hutto v. Finney, 437 U.S. 678, 686-87 (1978).

The allegations in this Complaint do not satisfy the objective component.  To be sure, Plaintiffs allege that the diet they were provided while confined at CCCF (during unspecified periods) was nutritionally inadequate with respect to calories and protein.  However, aside from alleging that the coffee and tea were weak, the cabbage was raw, and the ketchup and mustard were insufficiently supplied, Plaintiffs do not describe the diet they were served at all.  Nor do Plaintiffs indicate the dates of their confinement at CCCF or otherwise plead facts showing how long they allegedly suffered from malnutrition.  And while Plaintiffs state that they sustained "diminished mental and physical faculties[, they] could not perform some usual human

---

[5] See also Trujillo v. Williams, 465 F. 3d 1210, 1227 (10th Cir. 2006); Thompson v. Gibson, 289 F. 3d 1218, 1222 (10th Cir. 2002); Shrader v. White, 761 F. 2d 975, 986 (4th Cir. 1985).

functions[, and they] were forced to endure a diminished resistance to fatigue and illness (Compl. ¶ 3.11), these allegations are too conclusory to show that the deprivation of adequate nutrition had a sufficiently serious effect on each Plaintiff's health to satisfy the objective component of the conditions of confinement claim under the Iqbal pleading standard.  "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation . . . . Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Iqbal, 129 S. Ct. at 1949 (citations and internal quotation marks omitted).

Nor do Plaintiffs' allegations satisfy the subjective component of a conditions of confinement claim.  First, an individual defendant in a civil rights action must participate in the alleged wrongdoing, and Plaintiffs do not assert facts showing that the named individual defendants participated in violating their constitutional rights.  See Iqbal, 129 S. Ct. at 1948 ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged

19

wrongs"). Second, Plaintiffs do not assert facts showing that each named individual defendant was deliberately indifferent. To be sure, Plaintiffs allege generally that defendants were "deliberately indifferent" to their need for adequate nutrition in that they used inmates, supervised by a correctional sergeant and an Aramark employee, to prepare and serve food. (Compl. ¶¶ 3.3-3.5) Plaintiffs also assert that "defendants either knew or should have known that the requirements of the Menu were not being met." (Id. at ¶ 3.8). But to establish deliberate indifference, a plaintiff must set forth facts "show[ing] that the official was subjectively aware" of the alleged malnutrition and thereafter failed to reasonably respond to it. Farmer v. Brennan, 511 U.S. 825, 829 (1994). In this Complaint, Plaintiffs' "bare assertions . . . amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim, [and a]s such [are] not entitled to be assumed true." Iqbal, 129 S. Ct. at 1951 (citations and internal quotation marks omitted). Because the Complaint makes no non-conclusory factual allegations regarding the subjective element of the claim with respect to the individual defendants, and vicarious liability does not apply under § 1983, the Complaint fails to satisfy the subjective component of a conditions of confinement claim as to any named individual defendant.

Nor does the Complaint state a claim against Camden County, a local government entity, or Aramark.[6]  "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or act may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 694 (1978).  Similarly, in order for an entity such as Aramark to be liable under § 1983, Plaintiffs must show that the entity had a relevant policy or custom, and that the policy caused the constitutional violation.  See Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  A policy is made when a decisionmaker possessing final authority to establish policy with respect to the action issues a policy or edict.  Id. at 584.  A custom is an act that has not been formally approved by the policymaker but that is so widespread to have the force of a rule

---

[6] Plaintiff sues CCCF and the Camden County Department of Corrections as defendants, but neither a jail nor a department is a "person" that may be found liable under § 1983 pursuant to Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 688-90 (1978).  See Petaway v. City of New Haven Police Dept., 541 F. Supp. 2d 504, 510 (D. Conn. 2008); PBA Local No. 38 v. Woodbridge Police Dept., 832 F. Supp. 808, 825-26 (D.N.J. 1993); Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993); McCoy v. Chesapeake Correctional Center, 788 F. Supp. 890, 893-894 (E.D. Va. 1992).

or policy.  Id.  In this Complaint, Plaintiffs do not assert
facts showing that the allegedly deficient diet resulted from the
execution of a custom or policy of Camden County or Aramark.
This Court will accordingly dismiss the claims against Camden
County and Aramark for failure to state a claim upon which relief
may be granted.

    Because Plaintiffs' Complaint does not "contain sufficient
factual matter, accepted as true, to state a claim to relief that
is plausible on its face," Iqbal, 129 S. Ct. at 1949, and does
not plead factual content that allows this Court to draw the
reasonable inference that the named defendants are personally
liable, this Court is constrained to dismiss the Complaint
pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim
upon which relief may be granted.  Since the Complaint is being
dismissed on the merits, this Court will deny Plaintiff Grohs'
motion to certify a class and defendants' motion under Rule 12(c)
as moot.

    Plaintiffs may be able to plead a valid § 1983 claim for
damages[7] if they allege facts showing that the deprivation of a

------

    [7] Plaintiffs sought only declaratory and injunctive relief
in the Complaint.  Because a prisoner lacks standing to seek
injunctive and declaratory relief if he is no longer subject to
the alleged conditions, see Abdul-Akbar v. Watson, 4 F. 3d 195,
197 (3d Cir. 1993); Weaver v. Wilcox, 650 F. 2d at 27, and both
Plaintiffs have been transferred to other facilities, Plaintiffs
have standing to seek damages but not injunctive and declaratory
relief.

nutritionally adequate diet was sufficiently serious (regarding the amount and the duration of the malnutrition), and that each individual defendant was deliberately indifferent to the deprivation, i.e., plead facts showing how the named official knew that Plaintiffs were suffering from malnutrition due to a nutritionally inadequate diet and facts showing what the named defendant did in response to this knowledge.[8]

## IV.  CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion to construe the Complaint under 42 U.S.C. § 1983, dismisses the Complaint without prejudice to the filing of an amended complaint, discharges the Order to Show Cause, and denies the remaining motions as moot.  The Court will enter an appropriate Order.

JEROME B. SIMANDLE, U.S.D.J.

Dated:  June 21      , 2010

_____

[8] As previously stated, to establish that liability under § 1983 of Camden County or Aramark, Plaintiff must plead facts showing that the constitutional deprivation was the result of a policy or custom of the entity.